UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Edward Stolz, | Case No. 2:14-cv-02060-RFB-NJK |
| Plaintiff, | ORDER |
| v. | |
| Safeco Insurance Company of America, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 59) and Defendant's Motion for Summary Judgment (ECF No. 60). For the reasons stated below, the Court grants Defendant's Motion for Summary Judgment (ECF No. 60), and denies Plaintiff's Motion for Summary Judgment (ECF No. 59).

## II. BACKGROUND

Plaintiff's Complaint was removed to federal court on December 9, 2014. (ECF No. 1). Plaintiff brings the following causes of action: breach of contract, and both contractual and tortious breach of the implied covenant of good faith and fair dealing. Initial Motions for Summary Judgment were filed by Plaintiff and Defendant on January 8, 2016. (ECF Nos. 42, 43).

The motions were denied without prejudice, in light of parties' representations that they were participating in settlement negotiations. Settlement was not reached, and the parties refiled their Motions on October 18 and 19, 2016. (ECF Nos. 59, 60). Both motions are fully briefed.

## III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

## IV. UNDISPUTED FACTS

The Court incorporates its findings of undisputed facts articulated during the hearing on June 28, 2017.

Plaintiff held an insurance policy from Safeco. On January 7, 2010, Plaintiff's vehicle was

broken into at the Luxor Hotel in Las Vegas, Nevada. Much of his personal property was stolen. Plaintiff reported the theft to Luxor Hotel and the police, and reports were filed by each. The California Quality-Plus Homeowners Policy at issue is No. OX5779516. The Subject Policy defines specific duties placed upon the insured at the time of an alleged loss, stating in part: "In case of a loss to which this insurance may apply, you must perform the following duties: a. cooperate with us in the investigation, settlement, or defenses of any claim or suit; . . . e. prepare an inventory of the loss to the building and damaged personal property showing **in detail** the quantity, description, replacement cost and age. Attach all bills, receipts and related documents that justify the figures in the inventory. f. as often as we reasonably require: . . . (2) provide us with records and documents we request and permit us to make copies; . . . g. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth to the best of your knowledge and belief: (1) the time and cause of the loss; . . . (3) other insurance which may cover the loss; . . . (6) an inventory of damaged personal property described in 3e." (ECF No. 60-2) (emphasis added). The Subject Policy contains a limitations period which states, "No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage."

Sam Anderson, a Safeco employee, sent correspondence to Plaintiff on January 11, 2010, acknowledging receipt of Plaintiff's claim regarding the alleged loss and informing him that Safeco had opened an investigation into the claim. (ECF No. 60-3). Mr. Anderson sent correspondence to Plaintiff on January 28, 2010, requesting Plaintiff provide an inventory of stolen items to assist in evaluation of the claim. (ECF No. 60-5). Following a telephone conversation with Plaintiff on February 5, 2010, Cara Calhoun with Safeco sent Plaintiff an email which included a Contents Valuation form. The email notified Plaintiff that the form, or something comparable if Plaintiff had already produced such a document, would need to be completed and returned in order for any claim to be evaluated pursuant to the terms of the subject policy. (ECF No. 60-6). Ms. Calhoun sent a follow-up email to Plaintiff on March 1, 2010, regarding the Contents Valuation form, as she had not received the completed form. (ECF No. 60-8). Mr. Anderson sent correspondence to Plaintiff on April 2, 2010, again requesting Plaintiff provide a

list of stolen items, as well as the Police Report number. (ECF No. 60-9).

Plaintiff's former counsel, Matthew T. Ward, sent correspondence to Safeco on April 7, 2010, which included a six-page listing of items Plaintiff claimed were stolen. The listing did not include valuations or address nature or usage of any of the listed items, nor did the correspondence include a settlement demand. (ECF No. 60-10). In response to the April 7, 2010 correspondence, Mr. Anderson sent correspondence to Mr. Ward on April 13, 2010, requesting additional information and documentation, including ages, places of purchase and approximate values for the items that were stolen, any supporting documents available on the items, whether the items were for business or personal use, a copy of the Luxor incident report, and notarized proof of loss. (ECF No. 60-11). Mr. Anderson received no response to his April 13 correspondence, and subsequently sent follow-up correspondences to Mr. Ward on May 13, 2010, July 9, 2010, August 13, 2010, and September 9, 2010. Having received no responses, Ms. Calhoun sent an additional follow-up correspondence to Mr. Ward on September 28, 2010, again requesting the information and documentation, and informing that due to the lack of response for nearly 5 months, should no response be received by October 15, 2010, Safeco would close its file until Plaintiff responded and provided the requested information. (ECF No. 60-17).

Ms. Calhoun sent an additional follow-up to Mr. Ward on October 18, 2010, informing that due to the complete lack of response for nearly six months, Safeco was closing its file. (ECF No. 60-18). No further response or communication from Plaintiff was received by Safeco prior to the filing of the instant action on October 10, 2014. In response to an interrogatory in the instant litigation regarding the information that had been requested, ("For all items . . . please state when each item was purchased, the amount each item cost at the time of purchase, the amount each item was worth at the time of the subject incident and your basis for your belief of what each item was worth at the time of the subject incident."), Plaintiff answered: "Compilation of such specific data is often performed by a professional independent claims representative. Plaintiff does not purport to possess such background." (ECF No. 60-24).

. . .

. . .

## V. DISPUTED FACTS

Plaintiff testified in his deposition that he had several combative interactions with a Safeco adjuster on the phone. He testified that when he contacted the adjuster's supervisor, "there was an attempt to try to humiliate or intimidate" him and that she was not sympathetic to his complaint." Plaintiff's own testimony is the only evidence of these interactions, and Defendants dispute them.

## VI. DISCUSSION

### A. Breach of Contract

#### 1. Legal Standard

"Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005). Breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987). A breach of contract claim under Nevada law requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. Richardson v. Jones, 1 Nev. 405, 409 (1865); Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Richardson).

A party's failure to perform its obligations under a contract excuse the other party's further obligations to perform under the contract. Young Elec. Sign Co. v. Fohrman, 86 Nev. 185, 187-88 (1970) ("The lessee's material breach in failing to pay rent excused further performance by the lessor." (citing Restatement (First) of Contracts §397)).

"Courts are bound by language which is clear and free from ambiguity [in a contract] and cannot, using the guise of interpretation, distort the plain meaning of an agreement." Transaero Land & Dev. Co. v. Land Title of Nevada, Inc., 108 Nev. 997, 1001 (1992). When a contract is clear on its face, it "will be construed from the written language and enforced as written." Canfora v. Coast Hotels & Casinos, Inc., 121 Nev. 771, 776 (2005).

#### 2. Analysis

Defendant argues that Plaintiff breached the contract's cooperation requirement by failing to respond to requests for necessary information, and that therefore he may not obtain recovery for

breach of contract because of his own non-performance.

Plaintiff has provided only the six-page list that his former counsel provided, of items that were allegedly stolen from him. The Court finds that the list of items was so factually deficient that Defendant could not reasonably determine the value of the items on the list and whether or not they would be covered under the policy. Plaintiff does not dispute that the list is lacking in specific detail as to the items noted. This list does not constitute a proof of loss as contemplated by the plain terms of the contract. The list does not comport with Plaintiff's obligation under the Subject Policy to "prepare an inventory of the loss to the building and damaged personal property showing **in detail** the quantity, description, replacement cost and age. Attach all bills, receipts and related documents that justify the figures in the inventory." (ECF No. 60-2, at 9) (emphasis added). The agreement says, "[i]n reliance upon the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with the applicable provisions outlined in this policy." (ECF No. 60-2, at 1).

Plaintiff failed to perform his obligations under the contract to entitle him to performance by Safeco under the contract. Fohrman, 466 P.2d at 847. He never provided a detailed list of the amount of his loss as contemplated and required by the contract to entitle him to coverage. Plaintiff's claim for breach may not proceed because, the undisputed facts establish that Safeco did not breach its obligations under the contract.

Plaintiff argues in his Response to Defendant's Motion for Summary Judgment, that Defendant was in violation of Nevada Administrative Code 686A.670, governing investigation of insurance claims, which states:

"1. Each insurer shall establish procedures to begin an investigation of any claim within 20 working days of receipt of notice of the claim. Each insurer shall mail or otherwise provide to each claimant, a notice of all items, statements and forms, if any, which the insurer reasonably believes will be required of the claimant, within 20 working days after receiving notice of the claim. 2. Each insurer shall complete an investigation of each claim within 30 days after receiving notice of the claim, unless the investigation cannot reasonably be completed within that time."

This statute does not limit Safeco's right to request further information, or declare that it may only make a single request for information without follow-ups. NAC 686A.675(3) authorizes additional requests for information, stating: "If the insurer needs more time to determine whether a claim of a first-party claimant should be accepted or denied, it must so notify the claimant within 30 working days after receipt of the proof of loss giving reasons that more time is needed. If the investigation remains incomplete, the insurer shall, 30 days after the date of the initial notification and every 30 days thereafter, send to the claimant a letter setting forth the reasons that additional time is needed for investigation."

After Plaintiff sent the six-page list of items lost, Defendant repeatedly requested further information regarding the age, nature and value of the alleged stolen property. Under the language of the Subject Policy, Plaintiff had 60 days to provide a response regarding the information requested by Safeco. Plaintiff never provided a proof of loss in more detail. Plaintiff cannot therefore rely upon this code section to excuse his nonperformance under the contract.

Defendant also argues that Plaintiff has not presented evidence of the causation of damages, besides Plaintiff's claim in his complaint that he is seeking damages in excess of $50,000. "The party seeking damages has the burden of proving both the fact of damages and the amount thereof." Kelly Broadcasting v. Sovereign Broadcast, 96 Nev. 188, 193-94 (Nev. 1980). "The latter aspect of the burden need not be met with mathematical exactitude, but there must be an evidentiary basis for determining a reasonably accurate amount of damages." Central Bit Supply v. Waldrop Drilling, 102 Nev. 139, 142 (Nev. 1986). Defendants argue that aside from Plaintiff's self-serving claim that he suffered damages in excess of $50,000, he has not proven damages.

The Court agrees that Plaintiff has not sufficiently proven the damages he suffered from his loss. Plaintiff has not provided detail sufficient to establish a "reasonably accurate amount of damages." Waldrop Drilling, 102 Nev. at 142. The Plaintiff has not presented a sufficiently detailed list of items regarding coverage and subsequent or related losses connected to the alleged breach of contract in this case. His breach of contract claim is also dismissed on this ground.

### 3. Contractual Limitations Period

Plaintiff argues that the insurance contract between himself and Defendant was an unconscionable contract of adhesion, and that the clause limiting Plaintiff's time to bring suit to one year is oppressive and was hidden deep within the contract. The Court finds that it need not address the issue of whether the breach of contract claim is barred by the limitations clause, since the claim is being dismissed on other grounds.

### B. Implied Covenant of Good Faith and Fair Dealing

### 1. Contractual Breach

"Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 922-23 (Nev. 1991). Under Nevada law, an implied covenant of good faith and fair dealing exists in every contract. Pemberton v. Farmers Ins. Exch., 858 P.2d 380, 382 (Nev. 1993). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 923 (Nev. 1991). "To plead this [claim], the plaintiff must allege that: (i) the plaintiff and the defendant were parties to the agreement; (ii) the defendant owed a duty of good faith to the plaintiff; (iii) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (iv) the plaintiff's justified expectations were denied." Laguerre v. Nevada System of Higher Educ., 837 F. Supp. 2d 1176, 1181 (citing Perry v. Jordan, 900 P.2d 335, 337 (Nev. 1995)). Reasonable expectations are to be "determined by the various factors and special circumstances that shape these expectations." Perry v. Jordan, 900 P.2d 335, 338 (Nev. 1995).

In this case, the Court has found that Plaintiff did not comply with the terms of the contract. Safeco did comply with the terms of the contract and its further performance was excused by the Plaintiff's failure to perform as required by the contract. Safeco did not perform in a way that was

unfaithful to the terms of the contract.

## 2. Tortious Breach

"Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only "in rare and exceptional cases" when there is a special relationship between the victim and tortfeasor." Insurance Company of the West v. Gibson Tile Company, Inc., 134 P.3d 698, 702 (Nev. 2012). "A special relationship is "characterized by elements of public interest, adhesion, and fiduciary responsibility." Examples of special relationships include those between insurers and insureds, partners of partnerships, and franchisees and franchisers. Each of these relationships shares "a special element of reliance" common to partnership, insurance, and franchise agreements. We have recognized that in these situations involving an element of reliance, there is a need to "protect the weak from the insults of the stronger" that is not adequately met by ordinary contract damages." Id. "This Court [recognizes] a cause of action in tort for the breach of an implied covenant of good faith and fair dealing where an insurer fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy." Aluevich v. Harrah's, 99 Nev. 215, 217 (Nev. 1983).

On the undisputed evidence, the Court does not find that Defendant's failure to pay on the policy was in bad faith; rather, Defendant did not have all the requisite information from Plaintiff, and Plaintiff discontinued responsive communications with them. Plaintiff was required to provide the information requested by Safeco in order to be entitled to payment under the contract. Plaintiff did not supply that information after repeated requests. Safeco was not then required to further perform under the contract.

Defendant also argues that the causes of action for alleged breaches of covenant are untimely. "A bad faith tort claim is controlled by the four-year statute of limitations covering actions upon a 'liability not founded upon an instrument in writing.'" United States Fidelity & Guar. Co. v. Peterson, 91 Nev. 617, 620 (1975). The statute of limitations begins running when the "aggrieved party knew, or reasonably should have known, of facts giving rise to damage or injury." G and H Associaties, 113 Nev. 265, 272 (Nev. 1997). Plaintiff's deposition states that in

April 2010, Plaintiff ceased all communication with Safeco and engaged counsel because "Safeco was not bringing anything to the party, and that became apparent. They didn't want to address this issue . . . the tone and tenor of the conversations with all who would come on the line to communicate with me . . . was all very negative." Plaintiff filed his Complaint on October 10, 2014, over four years after he admitted to being aware of the conduct on which he bases his tortious breach of covenant claim. Therefore, the claim is also time barred.

### VII. CONCLUSION

IT IS ORDERED that Defendant's Motion for Summary Judgment (ECF No. 60) is GRANTED, and Plaintiff's Motion for Summary Judgment (ECF No. 59) is DENIED.

The Clerk of Court is instructed to close the case.

DATED: September 28, 2017.

**RICHARD F. BOULWARE, II**
**United States District Judge**